# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE

_____

LARRY JONES,                    |
                                |
            Plaintiff,          |
                                |
VS.                             | No. 2:24-CV-01388-SVW-ADS
                                |
COUNTY OF LOS ANGELES, ET AL    |
                                |
            Defendants.         |
_____


**EXCERPTED TESTIMONY OF DEPUTY IRA YNIGO**

REPORTER'S TRANSCRIPT OF JURY TRIAL - DAY 1

LOS ANGELES, CALIFORNIA

THURSDAY, AUGUST 15, 2024

9:00 A.M.


_____

APRIL LASSITER-BENSON, RPR
FEDERAL OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
(213)894-3539

```
 1                      - A-P-P-E-A-R-A-N-C-E-S -

 2

 3    For the Plaintiff:

 4                       MR. APEMWOYAH KISOB ALARIC-LORENZO
                         KISOB LAW FIRM
 5                       3680 WILSHIRE BOULEVARD
                         SUITE P 04-1147
 6                       LOS ANGELES, CA 90010
                         (702)863-4243
 7                       alkisob@kisoblaw.us

 8

 9

10    For the Defendant, County of Los Angeles:

11                       MS. LENORE CABREROS KELLY
                         COLLINSON DAEHNKE INLOW & GRECO
12                       21515 HAWTHORNE BOULEVARD
                         SUITE 800
13                       TORRANCE, CA 90503
                         (424)212-7777
14                       lenore.kelly@cdiglaw.com

15

16

17

18

19

20

21

22

23

24

25
```

3

1                       -I-N-D-E-X -

2

3       **TESTIMONY OF IRA YNIGO**

4       Direct Examination
        By Mr. Alaric-Lorenzo`                        4

5

6

7

8

9                   - E-X-H-I-B-I-T -

10

        Exhibit No. 1                                  11

11

        Exhibit No. 10                                 15

12

        Exhibit No. 11                                 24

13

        Exhibit No. 17                                 26

14

15

16

17

18

19

20

21

22

23

24

25

                       APRIL LASSITER-BENSON, RPR
        UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                    THURSDAY, AUGUST 15, 2024; 9:00 A.M.

 2                       LOS ANGELES, CALIFORNIA

 3          ----------------------------------------------

 4                 (WHEREUPON, additional matters were heard by

 5                 the Court, after which the following excerpt

 6                 of Deputy Ira Ynigo's testimony from the

 7                 proceedings was requested as follows:)

 8          MR. ALARIC-LORENZO:  Your Honor, plaintiffs

 9   call defendant Ynigo.

10             THE COURT:  All right.

11                 (WHEREUPON, the witness was sworn in by the

12                 Courtroom Deputy.)

13          THE WITNESS:  My name is Ira Ynigo.  That's

14   I-R-A, Y-N-I-G-O.

15

16                              *  *  *

17                           IRA YNIGO,

18   was called as a witness, and after having been duly sworn,

19   took the witness stand and testified as follows:

20

21                      DIRECT EXAMINATION

22   QUESTIONS BY MR. ALARIC-LORENZO:

23   Q.    Good afternoon, Mr. Ynigo.

24   A.    Yes.

25   Q.    Do you know the plaintiff in this action?
```

1   A.    Yes.

2   Q.    You currently work at the Men's Central Jail.

3   A.    I do, yes.

4   Q.    And you're a sheriff's Deputy, correct?

5   A.    I am, yes.

6   Q.    On September 19, 2023, you were working as a

7   Sherrif's Deputy at the Men's Central Jail, correct?

8   A.    Correct.

9   Q.    And you were assigned to the 7,000 floor?

10  A.    At the time, yes.

11  Q.    And it is true that on that day, you received a

12  distress call that plaintiff had fallen in the shower,

13  correct?

14  A.    False.

15  Q.    Did you respond to a call that plaintiff had fallen

16  in the shower on September 19, 2023?

17  A.    I did not, no.

18  Q.    Did you take plaintiff to go get a shower on

19  September 19, 2023?

20  A.    Yes.

21  Q.    Did you escort him back to his cell?

22  A.    Yes.

23  Q.    Isn't it true that you went there with another

24  Deputy called "Arambulo"?

25          **MS. KELLY:**  Objection.  Vague and ambiguous as

```
 1    to time.
 2              THE COURT:  Yeah, I mean, when -- are you
 3    saying when he took him to the shower or when he came
 4    back to the shower?
 5              MR. ALARIC-LORENZO:  When he went back to get
 6    plaintiff out.
 7              THE COURT:  Okay.
 8              THE WITNESS:  No, I was told to go there as
 9    directed by Sergeant Arambulo.
10    BY MR. ALARIC-LORENZO
11    Q.   And why did he tell you to go back?
12              MS. KELLY:  Objection.  Speculation.
13              THE COURT:  Well, what did he say?
14    BY MR. ALARIC-LORENZO
15    Q.   What did he say?
16    A.   Due to Larry's recalcitrant behavior, he had me
17    respond to him to the 7,000 hard row.
18    Q.   Were you inside the shower with plaintiff Jones
19    when he took his shower?
20    A.   No, there's not enough room.
21    Q.   When you left him in the shower -- when you
22    escorted him to go get a shower, did you exit the floor,
23    the 7,000 floor?
24    A.   No, I did not.
25    Q.   What did you do?
```

1  A.    I continued my module operations for the floor.

2  Q.    Were you in the same -- I'll play a video.

3        When you say you continued your operations,

4  I'm asking -- I'm trying to find out, were you in

5  the same, like, the row where you have plaintiff

6  and Mr. Turner and Mr. Gay?

7  A.    You're talking about the hard row.

8  Q.    Yes.

9  A.    No, I was not currently on the row.

10 Q.    And then Deputy Arambulo tells you that plaintiff

11 is being recalcitrant, correct?

12 A.    Yes.

13 Q.    Did you find out exactly what the reason was for

14 him to have arrived at that conclusion?

15 A.    At the time, no.

16 Q.    But you believed him immediately.

17        **MS. KELLY:**  I'm sorry?

18        **THE WITNESS:**  What?

19 BY MR. ALARIC-LORENZO

20 Q.    You believed him immediately -- you said plaintiff

21 was being recalcitrant, correct?

22 A.    It's not a form of belief, it's just, whatever my

23 Sergeant tells me to do, I have to do it.  I was ordered.

24 Q.    So, it is fair to say that when you were

25 approaching or when you returned to the shower, after you

1   escorted plaintiff to go get a shower, take a shower, the

2   next time that you were approaching that shower, you were

3   approaching it knowing that you were going to meet

4   someone who was being recalcitrant, correct?

5            **MS. KELLY:**  Objection.  Argumentative.  Lacks

6   foundation.

7            **THE COURT:**  Overruled.

8            **MR. ALARIC-LORENZO:**  His answer.

9            **THE WITNESS:**  Can you rephrase that?

10  *BY MR. ALARIC-LORENZO*

11  *Q.*     After the deputy -- after Deputy Arambulo told you

12  that plaintiff was being recalcitrant, is it fair to say

13  that when you were returning to go meet plaintiff, you

14  had in your mind that plaintiff, or the person that you

15  were going to meet, was someone who was being

16  recalcitrant?

17  *A.*     Yes.

18  *Q.*     How long have you worked as a Deputy at the Men's

19  Central Jail?

20  *A.*     Currently or at the time of the incident?

21  *Q.*     Entirely, like --

22            **THE COURT:**  When?

23  *BY MR. ALARIC-LORENZO*

24  *Q.*     How long have you worked at the Men's Central Jail?

25            **THE COURT:**  The relevant time is that at the

     1    time of this incident, September 2023.

     2             **MR. ALARIC-LORENZO:**  No, I don't want to limit

     3    it to that, Your Honor.

     4             **THE COURT:**  I do.

     5             **MR. ALARIC-LORENZO:**  Okay.  I respect you.

     6             **THE COURT:**  I do.

     7              How long were you working the jail by

     8    September 19, 2023?

     9             **THE WITNESS:**  Approximately three years, Your

    10    Honor.

    11    *BY MR. ALARIC-LORENZO*

    12    *Q.*    And within that time, are there times when you

    13    would be sent to go maybe take care of some issue

    14    relating to an inmate and you would not be told that that

    15    person is being recalcitrant?

    16    *A.*    Yes.

    17    *Q.*    And were there times when they would tell you the

    18    person you're going to meet is being recalcitrant?

    19    *A.*    That's fair to say, yes.

    20    *Q.*    As you sit here today, the response that you

    21    provide or the response that -- sorry.  Strike that.

    22              Isn't it true that the way you're going to

    23    respond to a person who is being recalcitrant, is

    24    different from the way you're going to respond to

    25    someone whom you've not -- who not being

```
 1   recalcitrant?
 2           MS. KELLY:  Objection.  Incomplete
 3   hypothetical.
 4           THE COURT:  Over- -- it's not hypothetical.
 5   Objection is overruled.
 6           MR. ALARIC-LORENZO:  His answer.
 7           THE WITNESS:  Rephrase that, please.
 8   BY MR. ALARIC-LORENZO
 9   Q.   Isn't it true that the way you respond to an inmate
10   who is allegedly being recalcitrant, is different from
11   the way you would respond to an inmate who is not being
12   recalcitrant?
13   A.   No, it is not, because it may be a rouse.  You must
14   always be ready.
15   Q.   I want you to please turn to Exhibit Number 1.
16   Yes, Number 1.
17           MS. KELLY:  Is the binder up there?
18           THE WITNESS:  I apologize, I don't have a
19   binder.
20           THE COURTROOM DEPUTY:  Exhibit Number 1 is
21   placed before the witness.
22   BY MR. ALARIC-LORENZO
23   Q.   Do you have Exhibit Number 1 in front of you?
24   A.   Yes, Exhibit Number 1.
25   Q.   You signed -- you've seen this document before,
```

1    correct?

2    A.    Correct.

3    Q.    And this is the injury or illness report relating

4    to the incident that happened on September 19, 2023,

5    correct?

6    A.    Yes.

7    Q.    And at the bottom of this document, that is your

8    signature under Item Number 7, correct?

9    A.    Yes, it is.

10          **MR. ALARIC-LORENZO:**  Your Honor, plaintiffs

11   move -- plaintiff moves to admit Exhibit Number 1.

12          **MS. KELLY:**  No objection.

13          **THE COURT:**  Received.

14          (WHEREUPON, an item was marked as Exhibit

15          Number 1.)

16   BY MR. ALARIC-LORENZO

17   Q.    Deputy Ynigo, please turn to Exhibit Number 8.

18   A.    Yes.

19   Q.    Have you ever seen this sign before?

20   A.    Yes.

21   Q.    And you understand that the sign means that each

22   time an inmate is being escorted out of their cell or

23   housing location, they have to be cuffed in the rear?

24   A.    Their housing location, yes.

25   Q.    On September 19, 2023, did you cuff plaintiff

1   Jones' hands when you took him out to go take a shower?

2   A.   He wasn't leaving his housing location, but, no, I

3   did not.

4   Q.   Is the housing location different from a cell?

5   A.   Yes.

6   Q.   How?

7   A.   There is the hard row that is secured by two doors

8   that are locked at all times.  That is the housing

9   location of 7 inmates on 7,000 hard row.

10  Q.   So, it is your contention that this row does not

11  apply to the floor where plaintiff --

12           (WHEREUPON, the reporter requested

13            clarification.)

14  BY MR. ALARIC-LORENZO

15  Q.   So, is it your contention that the sign or the row

16  in Exhibit Number 8 is inapplicable to the row where

17  plaintiff is housed?

18  A.   No, it is not.

19           **MS. KELLY:**  Objection.  Misstates testimony.

20  Argumentative.

21           **THE COURT:**  You've got to stand up when you

22  make an objection.

23           **MS. KELLY:**  Yes, Your Honor.

24            Objection.  Misstates testimony, and

25  argumentative.

1              **THE COURT:**  Overruled.

2              **MR. ALARIC-LORENZO:**  His answer.

3              **THE WITNESS:**  It applies.

4    *BY MR. ALARIC-LORENZO*

5    Q.    Did you cuff Mr. Gay when you took him out of his

6    cell on the day of the incident?

7    A.    I did not, no.

8    Q.    When you reopened plaintiff's door on the day of

9    the incident to hand him over his shower bag, did you

10   cuff Plaintiff Jones?

11   A.    I did not, no.

12   Q.    Could you please turn to Exhibit Number 10.

13         Have you seen this document before?

14   A.    Yes.

15   Q.    Isn't it true that this is one of the policy memos

16   for employees at the Men's Central Jail?

17   A.    Yes, it is.

18   Q.    Do you see the area that I'm pointing to, starting

19   from "All door, sliders"?  You see that?

20   A.    Yes, I do.

21   Q.    And if you permit me I'll just read very quickly.

22   It says, "All doors, sliders, gates, handcuffing ports

23   and cells shall be closed and secured at all times.  Any

24   exceptions shall be approved by the on duty watch

25   commander.  This includes, but is not limited to the

```
 1    following:"
 2          And then ...
 3          Is a slider the same as a tray slot?
 4    A.    In what pretense?
 5    Q.    What is a slider?
 6    A.    A door, a gate.
 7    Q.    So, a cell gate is the same as a slider?
 8    A.    In what pretense?
 9    Q.    On plaintiff's row, what do you understand a slider
10    to be?
11    A.    There are no sliders on his row.
12    Q.    What is a handcuffing port?
13    A.    That would be a tray slot.
14    Q.    Where -- the handcuffing port on plaintiff's row,
15    closed, as per the policy on the day of the incident?
16          All of the handcuffing ports, were they
17    closed?
18          MS. KELLY:  Objection.  Vague and ambiguous as
19    to time on the day of the incident.
20          THE COURT:  He can answer if he knows.
21          THE WITNESS:  They were not at the time.
22    BY MR. ALARIC-LORENZO
23    Q.    But you closed plaintiff's handcuffing port,
24    correct, on the day of the incident?
25    A.    Yes, after his shower was complete, yes.
```

         1                  **MR. ALARIC-LORENZO:**  Your Honor, at this time,

         2    plaintiff moves to admit into evidence, Exhibit Number

         3    10.

         4                  **THE COURT:**  Received.

         5                  **MS. KELLY:**  No objection.

         6                  (WHEREUPON, an item was marked as Exhibit

         7                  Number 10.)

         8    *BY MR. ALARIC-LORENZO*

         9    *Q.*    Deputy Ynigo, can you please turn to Exhibit Number

        10    11.

        11    *A.*    Yes.

        12    *Q.*    Have you seen this document before?

        13    *A.*    Yes.

        14    *Q.*    And you agree that the purpose of this order is to

        15    set forth procedures regarding housing and escorting

        16    inmates throughout the Men's Central Jail, correct?

        17    *A.*    Yes.

        18    *Q.*    Can you please turn to the second page of that

        19    document.

        20                  **THE COURT:**  Who underlined all of these

        21    documents?

        22                   Did you underline these documents?

        23                  **MR. ALARIC-LORENZO:**  Forgive me, Your Honor.

        24                  **THE COURT:**  Did you underline these documents

        25    in yellow?

1          Who did that?

2          **MR. ALARIC-LORENZO:**  I think the defendants

3     did that.

4          **THE COURT:**  I see.

5          Did you do that?

6          **MS. KELLY:**  Yes, Your Honor.

7          **THE COURT:**  That's not the way the document is

8     published.  That was something you did, correct?

9          **MS. KELLY:**  I'm sorry, Your Honor?

10         **THE COURT:**  It was something you did.  You did

11    the yellowing, right, or was it in that format when it

12    was issued?

13         **MS. KELLY:**  I can't recall, Your Honor, this

14    was a Rule 26 production.

15         **THE COURT:**  All right.  Go ahead.

16    *BY MR. ALARIC-LORENZO*

17    *Q.*    Please turn to the second page of Exhibit Number

18    11.  And do you see the area where I'm pointing to?

19    *A.*    Yes.

20    *Q.*    Doesn't it say, "At no time will more than one

21    inmate be allowed onto the same row corridor"?

22    *A.*    Yes.

23    *Q.*    When you reopened plaintiff's cell door while

24    Mr. Gay was walking into the shower, were you in

25    compliance with this policy?

1   A.    I'm not sure.  Did he remain in the cell in the

2   video or did he come out into the row?

3   Q.    When you reopened the door, were you in compliance

4   with this policy, "yes" or "no"?

5   A.    I'm not sure.

6   Q.    I need a "yes" or --

7   A.    I'm not an expert, I'm sorry.

8   Q.    You also see where I'm pointing to, the top

9   paragraph?

10  A.    I do not.

11  Q.    You don't see it?

12  A.    I do not.  Your screen --

13          **THE COURT:**  What did you say?  Oh, I see.

14          **THE WITNESS:**  Yes.

15  *BY MR. ALARIC-LORENZO*

16  Q.    And it does say, "At no time shall deputy personnel

17  permit," then there's redacted text, "inmates to approach

18  cell of another inmate on the row to accept any items or

19  engage in conversation," correct?

20  A.    Correct.

21  Q.    When you reopened plaintiff's cell door on the day

22  of the incident, wasn't Mr. Gay standing right there at

23  the shower door?

24  A.    At the door, right, not his cell?

25  Q.    Just answer.

```
 1   A.    Correct, yes.

 2   Q.    Were you in compliance with this policy, to your

 3   knowledge?

 4   A.    I do not know.

 5   Q.    Do you see where I'm pointing at, the --

 6   A.    I do not.

 7   Q.    You see now?

 8   A.    Yes.

 9   Q.    It says, "All module gates and doors shall remain

10   in a locked position at all times, with the exception of

11   authorized use."

12   A.    Correct.

13   Q.    On the day of the incident giving rise to this

14   lawsuit, did you leave some of the doors inside

15   plaintiff's row, unlocked?

16         MS. KELLY:  Objection.  Vague and ambiguous as

17   it time on the day of the incident.

18         THE COURT:  Overruled.

19         MR. ALARIC-LORENZO:  You may answer.

20         THE WITNESS:  What was in authorized use, yes.

21   BY MR. ALARIC-LORENZO

22   Q.    The question is, did you leave any of the doors on

23   plaintiff's row at about the time of this incident,

24   giving rise to this lawsuit, unlocked?

25   A.    Yes.
```

 1   Q.    Can you please turn to the top page.  Do you see

 2   where I point, the highlighted area of that page?

 3   A.    Yes.

 4   Q.    And it says, "Handcuffs, waste chains shall be used

 5   when escorting," right?

 6   A.    Yes.

 7   Q.    Did you use a handcuff when you escorted Plaintiff

 8   Gay to the shower on that day?

 9   A.    For a movement, no.

10   Q.    Did you use a handcuff when you escorted Plaintiff

11   Jones to the shower on that day?

12   A.    No, I did not.

13   Q.    Did you use a waist chain?

14   A.    No, I did not.

15   Q.    Same for Mr. Gay; did you use a waist chain?

16   A.    No, I did not.

17   Q.    So it is fair to say you did not follow this

18   policy, correct?

19         **THE COURT:**  What was that?

20   *BY MR. ALARIC-LORENZO*

21   Q.    It is fair to say you did not follow this

22   particular policy, correct?

23   A.    I would not know.

24   Q.    You understand that it says that you have to use a

25   handcuff or a waist chain --

APRIL LASSITER-BENSON, RPR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   A.    When escorted, yes.

 2   Q.    -- when escorting?

 3   A.    Yes.

 4   Q.    You escorted plaintiff to the shower, correct, on

 5   the day of the incident?

 6   A.    It's more of a movement.  It's not much of an

 7   escort.  An escort's like, when you go take someone to a

 8   pass, you leave the facility, you leave their housing

 9   location.

10   Q.    So, it is your testimony that unless the inmate is

11   leaving the facility, that is movement and that is not

12   escorting, correct?

13         MS. KELLY:  Misstates testimony, Your Honor.

14   Objection.

15         THE COURT:  It's cross-examination.  He can

16   ask the question.

17   BY MR. ALARIC-LORENZO

18   Q.    Is it your testimony today that unless an inmate is

19   being removed from the Men's Central Jail, that would not

20   amount to escorting?

21   A.    From their housing location as the sign says.

22   Q.    Is the cell considered a housing location?

23   A.    Some cells, yes.

24   Q.    Forgive me.

25         Was plaintiff -- on September 19, 2023,
```

 1    did -- was Plaintiff Jones' cell not considered his

 2    housing location?

 3    A.    The 7,000 hard row is his housing location.

 4    Q.    So, does that also not mean that each time he's

 5    removed from his cell he is supposed to be chained --

 6    handcuffed or chained?

 7    A.    I don't understand what you're asking.

 8    Q.    I'll take it again.

 9          You see the highlighted area.

10    A.    Yes.

11    Q.    And it says, "Handcuffs and all waist chains should

12    be used when escorting," correct?

13    A.    Correct.

14    Q.    My question then is, did you handcuff or use a

15    waist chain on Plaintiff Jones when you removed him from

16    his cell to go take a shower?

17    A.    The day of the incident, I did not.

18    Q.    Did you handcuff or use a waist chain on Mr. Gay

19    when you removed him from his cell and took him to go

20    take a shower?

21    A.    On the day of the incident, I did not.

22    Q.    Isn't it true that within a month of the incident,

23    so, starting from August 2023, August 1st or August 19,

24    or let's just say from August 1st, 2019 [sic] or 2023,

25    all the way to the date of the incident, isn't it true

1    that the inmates on that row were never cuffed each time

2    you took them out to go take a shower?

3    A.    That's false.

4    Q.    Do you not agree that at least that you have on

5    multiple occasions, taken inmates out of the housing

6    locations without handcuffing them?

7    A.    Some inmates don't require handcuffs to leave their

8    housing locations, so, yes.

9    Q.    So you agree that you've taken some of them out on

10   multiple occasions without cuffing them?

11   A.    Yes, some inmates have low classification and don't

12   need handcuffs to leave.

13   Q.    The inmates who need handcuffing.  I'm asking about

14   the inmates that need to be handcuffed.

15        Do you or do you not agree that you've taken

16   them out of their cell on multiple occasions

17   without handcuffing them?

18        **MS. KELLY:**  Objection.  Relevance, Your Honor.

19   He's now asking about any inmates.

20        **THE COURT:**  Well, I'm going to allow it.  You

21   can ask him.

22   *BY MR. ALARIC-LORENZO*

23   Q.    Please answer.

24   A.    For any inmate, no.

25   Q.    Please turn to Page 5, which is also marked as

1    joint Exhibit 11005.

2             Do you see the highlighted area -- highlight

3    text?

4    A.    Yes.

5    Q.    That's right below the heading "Showers" correct?

6    A.    Yes.

7    Q.    And it says, "Escort personnel shall handcuff,

8    maintain, and escort the inmate to the shower in boxer

9    shorts with a towel," correct?

10   A.    Correct.  At the top you see it's a roof policy.  I

11   don't work the roof.

12   Q.    And you agree that you did not do this when you

13   escorted plaintiff to the shower on the day of the

14   incident, correct?

15   A.    Correct.  I don't work the roof.

16           **MS. KELLY:**  I'm sorry, what?

17           **THE WITNESS:**  Exercise roof.  Shower to roof,

18   the following umbrella.

19   *BY MR. ALARIC-LORENZO*

20   Q.    No, I'm talking about this particular text that is

21   highlighted.

22   A.    Where you're selecting the text?

23   Q.    Yes.

24   A.    Then, no.

25   Q.    So you didn't follow this policy.

1    *A.*    I did not, no.

2    *Q.*    And then on page six of the same exhibit, do you

3    see the highlighted text?

4    *A.*    Yes.

5    *Q.*    And it says, "The inmate shall be allowed 15

6    minutes to shower handcuffed, per policy, and escorted

7    back to their cell," correct?

8    *A.*    Yes.

9    *Q.*    You would agree that you did not do this on the

10    day -- you did not do this to Plaintiff Jones on the day

11    of the incident.

12    *A.*    On the day of the incident, correct.

13    **MR. ALARIC-LORENZO:**  Your Honor, at this time,

14    plaintiff will move to admit into evidence Exhibit Number

15    11.

16    **THE COURT:**  Received.

17    (WHEREUPON, an item was marked as Exhibit

18    Number 11.)

19    *BY MR. ALARIC-LORENZO:*

20    *Q.*    Deputy Ynigo, please turn to Exhibit Number 17.

21    Are you there?

22    *A.*    Yes, I'm there.

23    *Q.*    Have you seen this document before?

24    *A.*    I do not know what document you're referring to.

25    Can you adjust your screen again, please?

1   Q.   Oh, forgive me.  Thank you.

2        Seventeen.

3   A.   Yes.

4   Q.   You can also look at the binder if you'd like.

5   A.   I just want to make sure we're on the same page.

6   Q.   You've seen this document before, correct?

7   A.   Yes, I have.

8   Q.   And it is -- the purpose of the document is to set

9   forth the policy and the procedures of the Men's Central

10  Jail regarding the operation of all general housing

11  locations, correct?

12  A.   Correct.

13  Q.   Can you please turn to Page Number 2 of that

14  exhibit.

15  A.   Okay.

16  Q.   And do you see where it says Item Number C -- Item

17  C?  Sorry.

18  A.   Correct.

19  Q.   And it says, "Both the front sally port gates and

20  the outside hallway hard doors are to remain locked

21  unless in use," correct?

22  A.   Correct.

23  Q.   When you exited the row where the plaintiff is

24  housed after you kick the door on plaintiff, did you lock

25  the door leading to that row?

1    *A.*    I did not.

2          **MR. ALARIC-LORENZO:**  Your Honor, at this time,

3 plaintiff will move to admit into evidence Exhibit Number

4 17.

5          **THE COURT:**  Any objection?

6          **MS. KELLY:**  No objection, Your Honor.

7          **THE COURT:**  Sustained -- it will be received.

8          (WHEREUPON, an item was marked as Exhibit

9          Number 17.)

10 *BY MR. ALARIC-LORENZO*

11   *Q.*    Please turn to Exhibit Number 18, Deputy Ynigo.

12   *A.*    Yes.

13   *Q.*    Eighteen, yes.

14      Did you -- have you ever seen this document?

15   *A.*    I have not.

16   *Q.*    Please turn to Exhibit Number 21.

17      Are you there?

18   *A.*    Yes.

19   *Q.*    Have you ever seen this document?

20   *A.*    Yes.

21   *Q.*    And the document purports to lay out rules

22 regarding safety and security of cell gate operation,

23 correct?

24   *A.*    Yes.

25   *Q.*    And the doors on plaintiff's row are not cell

 1    gates, correct?

 2    A.    No, they're hard doors.

 3    Q.    So, the difference between a hard door and a cell

 4    gate is that the hard door has to be manually opened and

 5    shut while the cell gate can be operated through -- can

 6    be remotely controlled, correct?

 7    A.    No, they're also manually done.

 8              **MR. ALARIC-LORENZO:**  Your Honor, at this time,

 9    plaintiff will move to admit into evidence Exhibit Number

10    21.

11              **THE COURT:**  Objection?

12              **MS. KELLY:**  Yes, Your Honor.  It's not

13    relevant.  This is a cell gate operation on a training

14    book.

15              **THE COURT:**  Let me look at it here.

16               I'll reserve a ruling on this while we

17    finish the trial this afternoon.  You can renew the

18    motion.

19              **MR. ALARIC-LORENZO:**  Okay.

20              **MS. KELLY:**  Yes, Your Honor, thank you.

21    BY MR. ALARIC-LORENZO

22    Q.    So, Deputy Ynigo, it is your testimony that some of

23    the cell gates can be manually operated, correct?

24    A.    Yes.

25    Q.    And on Page 1 of Exhibit Number 21 --

1          **THE COURT:**  I haven't received that yet, so

2     don't ask him about it.

3          **MR. ALARIC-LORENZO:**  Okay, Your Honor.

4     *BY MR. ALARIC-LORENZO*

5     *Q.*    Deputy Ynigo, it is true that you referred to

6     Plaintiff Larry Jones on September 19, 2023, or you did

7     tell -- isn't it true that you told Plaintiff Jones that

8     he's acting like an asshole at about the time that

9     incident, giving rise to this lawsuit occurred?

10    *A.*    I wouldn't say that to a K10, no.  That would ensue

11    a fight.

12    *Q.*    When you say it would lead into a fight, are you

13    talking about a fight with the K10 -- with the inmate?

14    *A.*    Yes, most K10s hold high regard for their respect,

15    and if they're disrespected, they generally fight you.

16    And that's why they're K10s or higher.

17    *Q.*    Was -- to your knowledge, was Mr. Gay a K10 on the

18    day of the incident?

19    *A.*    No, he was much higher.

20    *Q.*    When you say, "Much higher," what does that mean?

21    *A.*    He was a K19.

22    *Q.*    And higher in what respect?

23    *A.*    Well, the grading scale is anywhere from K1 through

24    9GP.  And then K10 would be an inmate that assaults staff

25    members or they're a sexually violent predator, and then

```
 1    they it just works its way up to there, all the way to
 2    K20 where it caps out.
 3    Q.    And --
 4    A.    And it goes down every three months.
 5    Q.    So, when you opened Mr. Gay's door to let him out
 6    to go shower --
 7    A.    Yes.
 8    Q.    -- isn't it true that you turned your -- you turned
 9    around and you're facing the wall and back in his cell;
10    isn't that true?
11    A.    Where was he in relation to me?
12    Q.    When you opened Mr. Gay's cell door --
13    A.    Correct.
14    Q.    -- on the day of the incident to let him out to go
15    get a shower, isn't it true that at some point, you
16    turned around and you were back in his cell?
17    A.    I was back inside of his cell, you said?
18    Q.    No, you were back in his cell, so you were facing
19    the wall opposite to his cell door.
20    A.    Where was he in relation to me?
21          Was he directly behind me?
22    Q.    When you opened Mr. Gay's cell door on the day of
23    the incident, it took him some time to come out, correct?
24    A.    Yeah, it's a 15-minute video.  I don't know what
25    you're referring to.  My back was towards the wall a few
```

         1    times.

         2    Q.    To your knowledge --

         3    A.    Yes.

         4    Q.    -- on the day of the incident when you opened Mr.

         5    Gay's cell door, it took him some time -- it took some

         6    time for him to come out of the cell, correct?

         7    A.    Yes.

         8    Q.    And while you were waiting for him to come out, you

         9    turned around and faced the wall that is directly

        10    opposite his cell door, correct?

        11    A.    Yes.

        12    Q.    And it is also your testimony that Mr. Gay occupies

        13    the highest rank of the dangerous inmates?  He's a K19,

        14    correct?

        15    A.    No.

        16    Q.    Do you know --

        17    A.    I said it caps out at K20.  Nineteen comes before

        18    20, sir.

        19    Q.    So he's one step away from the highest level --

        20    A.    Yes.

        21    Q.    -- of the case?

        22    A.    He executed two police officers, yes.

        23          **MR. ALARIC-LORENZO:**  Your Honor, I move to

        24    strike that.  Not relevant.  Nonresponsive.

        25          **THE COURT:**  It's stricken.  The jury is

1   instructed to disregard it.

2   *BY MR. ALARIC-LORENZO*

3   Q.    You -- you testified that you would not tell

4   plaintiff that he's an asshole because plaintiff -- it

5   might lead into a fight, correct?

6   A.    Yes.

7   Q.    But then you are the same person who goes to open

8   the door of a K19 inmate who, according to you, has

9   killed two police officers.  And then before he comes out

10  of the cell, you turn around and you're facing the wall

11  in the opposite direction, correct?

12  A.    He was asking me about something on TV, yeah.  I

13  did, yes, I turned my back.

14  Q.    At that moment did you entertain any fear for your

15  safety?

16  A.    Definitely.

17  Q.    And that is how you show fear, by turning your back

18  to what you perceive to be fear or danger?

19  A.    Not all the time, no.

20  Q.    So, it is your testimony that at that point when

21  you're facing the wall -- when you are facing the wall,

22  forgive me, you couldn't see what Mr. Gay was doing,

23  correct?

24        Your eyes -- you don't have four eyes,

25  correct?

1   A.    No, but I saw him on his bunk sitting down.

2   Q.    I'm asking that at the time when you're facing the

3   wall and back in his cell door, could you see what

4   Mr. Gay was up to?

5   A.    No, I was not.

6   Q.    Is it your testimony that at that point you were

7   scared for your life?

8   A.    No, not at that point, no.

9   Q.    Did you harbor any fear for your safety at that

10  point?

11  A.    No, I have a good rapport with Inmate Gay.

12  Q.    Oh, do you have good -- sorry, what was it again?

13        Good what?

14  A.    Rapport, sir.

15  Q.    Oh, rapport.

16  A.    Rapport.

17  Q.    R-A-P-P-O-R-T?

18  A.    Yes.

19  Q.    Okay.  You have a good rapport with Inmate Gay.

20        Do you have a good rapport with Plaintiff

21  Jones?

22  A.    At the time, I thought so, yes.  That's why I did

23  showers.

24  Q.    You're not scared of Mr. Gay, because you have a

25  good rapport with him, correct?

1    A.    Yes, but it could change at any second.

2    Q.    And at the same time, you have a good rapport -- it

3    is your testimony that at that time you had a good

4    rapport with Plaintiff Jones, correct?

5    A.    Yes.

6    Q.    So, why do you think that calling him an asshole

7    would have lead to a fight?

8    A.    Well, I don't believe I called him an asshole, sir.

9    Q.    Isn't it true that you referred to Mr. Jones as a

10   motherfucker.

11   A.    It is not true, no.

12   Q.    You did not tell Mr. Gay that, in reference to

13   Mr. Jones, that this motherfucker is acting up?

14        You did not say -- you did not use those

15   words?

16   A.    I believe you said the first time, this asshole is

17   acting up.

18   Q.    After you have handed plaintiff his bag, did you

19   not turn to Mr. Gay -- did you not turn and ask Mr. Gay

20   to go back to his cell?

21   A.    I asked him to either go back to his cell or get in

22   the shower.

23   Q.    And did you not tell him as a reason for why you

24   were asking him to go back to his cell or get back in the

25   shower, did you not provide or supply as on a reason for

```
 1    that, the fact that plaintiff is acting like a
 2    motherfucker?
 3    A.    I did not, no.
 4    Q.    Mr. -- Deputy Ynigo.
 5    A.    Yes, sir.
 6          THE COURT:  It's past 5:00.  How much longer
 7    do you think you have to go with him?
 8          MR. ALARIC-LORENZO:  With the way it's going,
 9    Your Honor, I think I might need 40 more minutes and come
10    back tomorrow.
11          THE COURT:  We have to adjourn for the
12    evening.  I thought the trial would go at a different
13    pace.  Like I said, it's hard to predict.  And, of
14    course, we were way late by the situation this morning.
15    But I am confident that we will finish the trial
16    tomorrow.  So, you'll have the case probably in your
17    hands, certainly tomorrow, for a decision.
18               (WHEREUPON, the foregoing proceedings were
19               adjourned at 5:01 p.m.)
20                    (Adjournment).
21
22
23
24
25
```

1

2                         C E R T I F I C A T E

3          I, April Lassiter-Benson, do hereby certify that the

4    foregoing 34 pages are, to the best of my knowledge, skill

5    and ability, a true and accurate transcript from my

6    stenotype notes in the matter of:

7

8    LARRY JONES

9    vs.

10   COUNTY OF LOS ANGELES, ET AL

11

12         Dated this 1st day of November, 2024.

13

14   S/*APRIL LASSITER-BENSON*
     Official Court Reporter
15   United States District Court
     Central District of California
16

17

18

19

20

21

22

23

24

25